By the Court.
Sedgwick, Ch. J.
The propositions which have been argued, must of necessity be confined to the issues raised by the answer. The complaint averred, that the plaintiff had performed all conditions precedent of defendants, liability. The answer denied each and every allegation in the complaint not herein admitted. This is left by itself, might have made an issue as to each condi *128 tion precedent in the contract. Such was not its intention, for the answer proceeds, “that the plaintiff has not duly performed all the conditions of said agreement on his part, but on the contrary, although said agreements contained” conditions, etc., and then it enumerates certain things, which it specifically alleges show that the conditions had not all been performed. The issue is thus confined to the particular breaches of condition specifically referred to. These matters will have further attention in considering the reasons, urged by the learned counsel for defendant, for setting aside the verdict.
In the absence of an allegation in the answer that the corporation should have been made a defendant, the plaintiff should not be prevented from recovering as it does not appear, that without the corporation as a defendant, the rights of the present parties cannot be definitely determined.
A tender of the shares was not necessary, as the contract provided that they should be placed with the Trust Company, and that while there the defendant should pay, as provided.
The answer does not defend on the ground that the plaintiff had not deposited the resignations of their directors, as required by the contract. It has already been shown in what manner, the defendant pleaded the breaches of conditions. The answer makes no reference to this subject. But the testimony shows that plaintiff performed in this respect.
The counsel for defendant relies on the correctness of the following propositions maintained by him : 1st that the plaintiff was not the owner of 1,622 of the 4,550 shares which he contracted to sell to the defendant, and 2nd that these 1,622 shares, were not full paid and unassessable shares.
The contract provided that “the party hereto of the first part,” that is, the plaintiff, “is the owner of the 4,550 shares of the said stock, full paid and unassessable as aforesaid.”
*129 The defence in the answer, as to this subject matter is, that “the plaintiff was not, and never was the owner in good faith of about 1,622 shares of the said stock, so deposited by him, and could not lawfully transfer the same to the defendant, so as to create an absolute and unimpeachable title thereto in this defendant, for the reason that said shares of stock were the property of the said company, and had been at a meeting of the board of directors of said company, held without notice to all of said directors, at which meeting were present only the plaintiff and two others of said company, unlawfully voted to the plaintiff, without consideration therefor, and thereupon transferred to him, in fraud of the rights of said company and of the stockholders therein.”
The proof that certificates for such shares had been issued to the plaintiff, made it necessary for the defendant to show that the facts existed which would invalidate the-shares in the hands of the defendant. He proved the following facts : about a year before making the contract in question, there was held a special meeting of the board of' directors. Three directors, hicluding the plaintiff, were present. The following resolution was adopted : that, whereas, the president (the present plaintiff) had filled that office since the organization of the company in January-1869, without the receipt of any salary, and had also advanced to the company considerable sums of money which have not been repaid him, resolved that all the shares of stock now remaining in the treasury, as well as all that may now be due to it, held as collateral, be and hereby is-, donated and given to the said Eeed, the same to be in full, payment for such services and such advances as aforesaid. The certificate for the 1,622 shares was thereupon issued to the plaintiff, he himself signing the certificate as president. There was no proof that the shares held as collateral amounted to any particular sum, or that any such shares had been issued to the plaintiff. It was proved that one of the five directors had not received notice of the intended meeting. The plaintiff testified that he had given one to *130 a boy, to be delivered to that director. He further testified that before the meeting, he had advanced in money to the corporation $20,000 ; that he had received ho compensation for his services as president and had never claimed any ; and that the offer of compensation was made by the other directors present at the meeting.
The answer, it will have been noticed, does not rest a defense upon the stock not being full • paid and being “ unassessable.” Such a defense would imply,, that the plaintiff might be the owner, although hable to respond to creditors, on certain conditions. The defense is, that the corporation was the owner of the shares, and the plaintiff was not the owner, because the transaction by which they were issued was void, or might be avoided as against the defendant, who took with notice of the facts ; for the reasons, 1st, there was no consideration for the transfer ; 2d, it was invalid, because the plaintiff, being a trustee of the company, could not make a quorum, Avhen Avithout him there would be no quorum competent to transact business in the interest of himself personally; 3d, the meeting was invalid for want of notice to all the trustees.
, The first position is against the fact. The consideration was the satisfaction of a debt due by the company to the plaintiff. In Barnes v. Brown (80 N. Y. 521), the plaintiff took broader ground than is occupied by the plaintiff' here, and alleged, that the stock which had been transferred to him “was not full-paid stock, but the certificates were unlawfully issued Avithout any consideration, for the purpose of making up stock to be delivered under the contract.” The action was for damages for the fraud in delivering to him the stock under a contract which called for full paid capital stock. The complaint did not allege that the company had not issued or transferred the shares, or that the defendants were not the owners thereof. . The case has some bearing upon this appeal, because it referred to the consideration for which the company issued the certificates of shares.
. The court in the opinion, says that the plaintiff proved, *131 by the minutes of the company, that the shares were issued by the defendants ostensibly for moneys advanced and services rendered. Thereupon, the plaintiff offered to prove that the stock was issued without any valid consideration of payment and for the purpose of making up stock to be delivered to the plaintiff under the contract in action. It there said, “the obligation to bind the plaintiff for such stock could not be discharged by delivering to him worthless spurious stock, wrongfully issued by the company, without any consideration received therefor. It is not claimed and could not be claimed, that the corporation or its directors, could create any valid stock by issuing the same, without any consideration.” “ The proof thus offered was very material, and if received would have gone far towards completing the proof requisite to sustain the action.” The court did not hold that the proof given of the minutes showed that issuing of stock for moneys advanced was no consideration, but did hold that that the plaintiff was entitled to show that in fact, there was no consideration ; in other words, that the consideration appearing on the minutes did not exist in fact. In the present case, there was no dispute that the plaintiff had made the advances as testified by him, and took the shares in satisfaction of that demand. The fact of the advance and that good faith, were not denied, it seems to me, make the issuing of the shares the equivalent of a money subscription, offset as it might be, by the amount due to the plaintiff. There was intrinsically no fraud upon the company, stockholders or creditors, for each of these were placed in a better relation to their interests in the property of the company by the plaintiff relinquishing his place of preference or creditor, for a right to share, after payment of debts. The first position should be held not to be valid.
As to the second position, its merits rest upon the fact that the plaintiff, as a trustee, could not act for the company, in a transaction in which he received a benefit. This however, is to be limited by further saying that his beneficiaries could, if they thought it to their interest, ratify his act, or *132 at their option, avoid it. The company was a party to the agreement in this case and would be held to have ratified the issuing of the certificate of the shares, if it were not that their execution of the agreement was made by the plaintiff himself. The company, as appears by the plaintiff’s testimony, forthwith went into the control of other persons, the plaintiff resigning, and the defendant taking the office of president. There were no avoidance of the issuing of the shares, and the assent and tacit ratification by the company was guided by the defendant himself. The other beneficiaries were stockholders. None of these have in fact, assailed the issuing of the certificate. Whether they might do so in a proper action, should be considered in view of the fact that the defendant was to become a stockholder, upon performance of the agreement. He did, upon part performance, receive some of the shares of another kind, as to which there was no dispute. At the end of nine months from the making of the contract, he learned the facts of the issuing of the stock, and after that he took the benefit of an extension of time of performance, for such substantially, was the option that will be hereafter refered to, until the 7th of June. The plaintiff’s position in the mean time., was that he could not enforce his claims against the company for the advances. This made it necessary for the defendant as stockholder, to avoid at once the action of his trustee, the plaintiff, unless he wished to affirm the validity of the shares. No steps were taken towards disaffirmance, and he consequently, in effect, affirmed. If he did not disaffirm, there is no reason for supporting a defense that some other stockholder might therefore disaffirm. Such a possibility cannot be entertained in favor of the defendant, in view of his own acts.
Similar considerations apply to the third position, that the meeting of directors was invalid for want of notice to them. Beside the mere resolution at the meeting, the transaction had been executed, the plaintiff had received the certificate and had satisfied his demand against the *133 company. This executed transaction could not be opened by any one, except through the action of a court of equitable jurisdiction, and it would require that the plaintiff be placed in his original position. So far as the proof of the defendant discloses, every one interested had countenanced or ratified the plaintiff dealing with the stock as owner, with a knowledge of the facts, and the action referred to would not he.
Another defense was, that before the time for the delivery of the shares in question, the company had become indebted to Mr. Stearns, in the sum of $3,000. If this indebtedness was within the intention of the agreement, it was to be provided for by being paid out of the $25,000, which the defendant was to pay, and perhaps the defendant might have, in that account, reduced the recovery directed below. This was not requested by him.
There are many phrases in the contract which refer to the matter of the company’s indebtedness. It is impracticable to state them all. I will have to be content with giving my opinion, that, in view of the whole contract, it" did not intend that the indebtedness of the company it referred to, should be a debt contracted by the company, after the defendant had become its president, according to the purposes of the contract.
Another defense was, that the contract was abandoned by mutual consent and agreement of the parties. There was no express agreement of that kind. The facts that were relevant to the defense, were that after a breach by defendant, the plaintiff at defendant’s request gave in writing, an option to defendant to take the shares undelivered under the contract, upon payment to the Central Trust Company, of the money that the defendant had promised to pay by the contract. Also, at the request of defendant, the plaintiff had given a third person an option to take these shares and another 1,000 shares, upon payment of a sum, which was to be applied to the defendant’s indebtedness under the present contract. Neither of these options was carried out. The evidence showed that it was *134 not the intention of the parties, that the giving of the options should annul the present contract, but that, if money should be paid upon them, that money should go in liquidation of the amount due upon the contract, which it was intended should be kept alive. In fact, the option given to the defendant was nothing more than an extension of time, for the purpose of his performing the contract.
The last position to be noticed is, that the true measure of damage was the difference between the market value of the stock and the price named in the agreement. This implies that the plaintiff upon breach of the contract, had taken the stock and appropriated it to himself, and did not hold it, for the defendant. The facts do not show such an implication. The testimony did not prove that the plaintiff held the. stock otherwise than for the defendant.
Motion for-judgment for plaintiff in the amount of the verdict, granted with costs.
Van Vobst and Freedman, JJ., concurred.